**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy Sledge Lightfoot, et al., | No. CV-20-00666-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Debra DeBruine, | |
| Defendant. | |

Pending before the Court is Defendant Debra DeBruine's ("Ms. DeBruine") Motion for Summary Judgment (Doc. 70)[1] and Plaintiffs' Motion for Summary Judgment (Doc. 72). Also pending before the Court is Defendants' Motion for Preliminary Injunction (Doc. 83). These matters are fully briefed,[2] and the Court now issues its ruling.[3]

For reasons detailed below, all three motions are denied. Generally speaking, Plaintiffs' Motion for Summary Judgment lacks argument based in fact and law. Ms. DeBruine's Motion for Summary Judgment lacks factual support, which, in turn,

---

[1] Ms. DeBruine has also filed a Motion to Supplement Motion for Summary Judgment (Doc. 86), which the Court grants because Plaintiffs have filed no opposition.

[2] Plaintiffs filed a Response (Doc. 80) to Ms. DeBruine's Motion for Summary Judgment, and Ms. DeBruine filed a Reply (Doc. 82). Likewise, Ms. DeBruine filed a Response (Doc. 79) to Plaintiffs' Motion for Summary Judgment, and Plaintiffs filed a Reply (Doc. 81). Plaintiffs also filed a Response (Doc. 88) to Ms. DeBruine's Motion for Preliminary Injunction, and Ms. DeBruine filed a Reply (Doc. 89).

[3] Ms. DeBruine requested oral argument on her Motion for Summary Judgment. (Doc. 70 at 1). The Court denies this request as further argumentation will not assist the Court with its decision. *See* Fed. R. Civ. P. 78(b) (stating that a court may decide motions without oral hearings); LRCiv 7.2(f) (same).

1   demonstrates that her counterclaims are not likely to succeed. Therefore, the Court denies

2   Ms. DeBruine's Motion for Preliminary Injunction.

3   **I.    Background**[4]

4        The parties are family—sisters, actually—and the company holding the trademark

5   for the music group they founded, Sister Sledge. Here, Plaintiffs Kathy Sledge Lightfoot

6   ("Ms. Lightfoot") and Sister Sledge LLC (the "Company") claim that one of Ms.

7   Lightfoot's sisters, Ms. DeBruine, has infringed on the Sister Sledge trademark. (Doc. 13).

8   Ms. DeBruine denies these claims and, instead, alleges that Ms. Lightfoot and Counter

9   Defendant Kim Allen Sledge ("Ms. Sledge")[5] have breached their fiduciary duties to the

10   Company. (Doc. 26).

11        The Company itself was formed in 2006, by Ms. Lightfoot, Ms. DeBruine, Ms.

12   Sledge, and Joan Elise Sledge. In 2009, the Company applied for and obtained a federal

13   trademark (the "Trademark") for Sister Sledge. (Docs. 70 at 3; 71 at 4). The Company

14   was formed to hold the Trademark and manage the group, and each sister held a quarter

15   interest in the Company as a member and as a manager. (Doc. 70 at 2, 33).

16        By 2012, the parties had seen better days. The sisters voted to remove Ms. Lightfoot

17   as a Company manager, and Ms. Sledge resigned as a Company manager. (Docs. 70 at 3;

18   80-2 at 16). Although all the sisters were still Company members, only Joan Elise Sledge

19   and Ms. DeBruine served as managers. (Doc. 70 at 3).

20        In 2013, the Company sued Ms. Lightfoot for infringing on the Trademark because

21   she used the Sister Sledge mark to advertise her solo performances. (*Id.*) That case settled.

22   Under the terms of the settlement agreement (the "Agreement"), Ms. Lightfoot promised

23   she would only use the Sister Sledge trademark as a "factually descriptive term, such as

24

25   [4] Plaintiffs provided a separate Statement of Material Facts (Doc. 71), which the Court's
    Rule 16 Scheduling Order specifically forbade. (Doc. 50 at 5). Plaintiffs' briefing also
26   fails to use the Rule 16 Scheduling Order's citation style. (*Id.* at 5–6). Finally, Plaintiffs
    offer significantly less background information than Defendants. Therefore, the Court
27   necessarily draws from Defendants' briefing to establish this background because Plaintiffs
    have largely failed to provide their own background or to establish facts to the contrary.

28   [5] After failing to appear or otherwise defend, the Clerk of Court entered default as to Ms.
    Sledge. (Doc. 64).

1   'Kathy Sledge, original member of Sister Sledge.'" (*Id.* at 3).  After the Agreement, Ms.

2   Lightfoot continued with her solo performances without using the Sister Sledge name.

3   However, the parties agree Ms. Lightfoot still performed with her sisters as a group under

4   the name Sister Sledge.  (Docs. 80 at 4; 82 at 3, 8).

5       Then, in 2016, the Trademark's registration lapsed.  (Docs. 70 at 3; 71 at 4).[6]  Ms.

6   DeBruine says that Joan Elise Sledge, "whose health was failing," accidentally allowed it

7   to lapse.  (Doc. 70 at 3).  In 2017, Joan Elise Sledge passed, which left Ms. DeBruine as

8   the Company's sole manager.  (Docs. 70 at 4; 71 at 3).  Ms. Lightfoot then applied for and

9   obtained the Trademark.  (Docs. 70 at 4; 71 at 4).  Since then, Ms. Lightfoot has licensed

10  the Trademark "exclusively" to the Company pursuant to a 2020 Trademark License

11  Agreement.  (Docs. 71 at 4; 80-1 at 28–33).

12      In 2018, Ms. Lightfoot began to perform shows in the United States under the Sister

13  Sledge name, which Ms. DeBruine argues violated the Agreement.  (Doc. 70 at 4).  In

14  2019, Ms. Lightfoot and Ms. Sledge arranged meetings where they voted to change the

15  Company's Operating Agreement and reinstated themselves as managers of the Company.

16  (Docs. 70 at 4–5; 71 at 5).  They then used their managerial powers to withdraw the

17  Company from claims that any Company member was violating the Trademark, and they

18  voted to remove Ms. DeBruine as a manager.  (Docs. 70 at 5; 71 at 6).[7]  Ms. DeBruine

19  argues that this effectively dissolved the earlier Agreement, which had limited Ms.

20  Lightfoot's use of the Trademark.  (Docs. 70 at 5).  Plaintiffs do not contest this

21  characterization.  (*See* Docs. 71 at 6; 72-10 at 2 (containing a Company resolution that

22  dismissed "any current or past dispute" regarding the Trademark and recognizing that Ms.

23  Lightfoot is the Trademark's current owner)).

24      These corporate changes were challenged in a 2019 lawsuit in Arizona Superior

25  Court, where Judge Daniel G. Martin held that Ms. Lightfoot and Ms. Sledge properly

26

27  _____

[6] When a trademark's registration lapses, its statutory presumption of validity is said to have "evaporated."  *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 2012 WL 8134013, at *7 (C.D. Cal. June 18, 2012).

28  [7] Ms. DeBruine does not contest that she was properly removed as a Company manager.

changed the Operating Agreement so that it could be amended by a "two thirds vote of the voting members," that Ms. Sledge and Ms. Lightfoot properly elected themselves as managers, and that Ms. DeBruine's attempts to exercise sole authority over the Company are "null and void absent ratification by a two-thirds vote of the managers or voting members." (Doc. 79 at 100) (containing unpublished ruling in *Sister Sledge LLC v. Kathy Lightfoot*, CV 2019-006743 (Ariz. Super. Ct. July 31, 2019)).

Since then, Plaintiffs argue that Ms. DeBruine has used the Trademark to advertise her own group, Sister Sledge Sledgendary ("Sledgendary"). (Doc. 72-1 at 3). Plaintiffs argue Sledgendary falsely advertises itself as Sister Sledge because its members include Ms. DeBruine, her children, and another performer. (*Id.* at 5). They present screenshots from the website https://www.sistersledge.com, which advertises Ms. DeBruine's Sledgendary group. (Docs. 72-14 at 2; 72-19 at 2). Plaintiffs also argue that Ms. DeBruine conducts Sledgendary's affairs through her company, Sledge Entertainment LLC ("Sledge Entertainment"). (Doc. 72-1 at 6). Ms. DeBruine does not contest this Trademark use, and, instead, argues that she is permitted to do so. (Doc. 70 at 11).

In this current action, Plaintiffs bring several claims against Ms. DeBruine stemming from Ms. DeBruine's allegedly impermissible use of the Trademark to promote Sledgendary. (Doc. 13 at 2). First, they allege Ms. DeBruine infringed on the Trademark in violation of 15 U.S.C. § 1114. Second, they allege Ms. DeBruine unfairly competed with them by making false representations in violation of 15 U.S.C. § 1125(a) and Arizona law. Third, they bring a claim of unjust enrichment. Fourth, they seek a declaration that the Company owns Sister Sledge websites and social media accounts. Sixth, they seek injunctive relief against Ms. DeBruine. (Doc. 13 at 5–11).

In her Counterclaim, Ms. DeBruine first claims Ms. Lightfoot has breached her fiduciary duties to the Company. Second, Ms. DeBruine brings an unjust enrichment claim against Ms. Lightfoot. Ms. DeBruine brings these first two as derivative claims on the Company's behalf. (Doc. 70 at 14). Third, Ms. DeBruine seeks a declaration invalidating Ms. Lightfoot's ownership of the Trademark. And finally, Ms. DeBruine brings a claim

1    against Ms. Lightfoot for fraudulently registering the Trademark.  (Doc. 26 at 17–23).

2        Ms. DeBruine seeks summary judgment on all claims and counterclaims.

3    (Doc. 70 at 1).  Plaintiffs only seek partial summary judgment, but their Motion does not

4    make clear what exactly they seek partial summary judgment on.  (Doc. 81 at 2).  However,

5    their Reply states they seek (1) an order enforcing the Company's trademark rights, (2) an

6    order requiring Ms. DeBruine to relinquish control of all social media sites using the

7    Trademark, and (3) an order "dismissing" the counterclaims for breach of fiduciary duty

8    and unjust enrichment.  (Doc. 81 at 2).

9    **II.    Summary Judgment Legal Standard**

10       A court will grant summary judgment if the movant shows there is no genuine

11   dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R.

12   Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A factual dispute is

13   genuine when a reasonable jury could return a verdict for the nonmoving party.  *Anderson*

14   *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Here, a court does not weigh evidence

15   to discern the truth of the matter; it only determines whether there is a genuine issue for

16   trial.  *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).  A fact is

17   material when identified as such by substantive law.  *Anderson*, 477 U.S. at 248.  Only

18   facts that might affect the outcome of a suit under the governing law can preclude an entry

19   of summary judgment.  *Id.*

20       The moving party bears the initial burden of identifying portions of the record,

21   including pleadings, depositions, answers to interrogatories, admissions, and affidavits,

22   that show there is no genuine factual dispute.  *Celotex*, 477 U.S. at 323.  Once shown, the

23   burden shifts to the non-moving party, which must sufficiently establish the existence of a

24   genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio*

25   *Corp.*, 475 U.S. 574, 585–86 (1986).  The evidence of the non-movant is "to be believed,

26   and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  But

27   if the non-movant identifies "evidence [that] is merely colorable or is not significantly

28   probative, summary judgment may be granted."  *Id.* at 249–50 (citations omitted).  "A

1    conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

2    insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House,*

3    *Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997).

4    **III.    Plaintiffs' Motion for Summary Judgment**

5        The Court begins with Plaintiffs' Motion for Summary Judgment.  The deficient

6    three-page Motion fails to identify portions of the record or even cite to its improperly filed

7    Statement of Material Facts.  (Doc. 72-20 at 3); (*see also* Doc. 50 at 5–6 (establishing

8    motion for summary judgment requirements).  Therefore, Plaintiffs fail to identify portions

9    of the record showing there is no factual dispute.  *See Celotex*, 477 U.S. at 323.  Although

10   Plaintiffs' Reply contains more argument and citations to the record, a Reply is not the

11   proper document in which to establish arguments and cite to the record as it denies Ms.

12   DeBruine a chance to respond.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)

13   ("The district court need not consider arguments raised for the first time in a reply brief.").

14   In addition, the Motion fails to specifically identify which claims it seeks judgment for.

15   Only after Ms. DeBruine interpreted Plaintiffs' Motion and made a list of items that she

16   believed to be at issue did Plaintiffs' Reply clarify what they seek by repeating Ms.

17   DeBruine's list.  (Doc. 81 at 2).  Therefore, Plaintiff's Motion for Summary Judgment is

18   denied.

19   **IV.    Defendant's Motion for Summary Judgment**

20       The Court turns to Ms. DeBruine's Motion for Summary Judgment, which seeks

21   summary judgment on all the claims and counterclaims.

22           **a.  Federal Trademark Claims**

23       The Court begins with an analysis of the federal trademark claims.  These include

24   Plaintiffs' federal trademark infringement and unfair competition claims, as well as Ms.

25   DeBruine's fraudulent trademark registration counterclaim.

26                **i.    Federal Trademark Infringement & Unfair Competition**

27       Plaintiffs' claims for federal trademark infringement and federal unfair competition

28   require a party to show Ms. DeBruine is "using a mark confusingly similar to a valid,

- 6 -

1  protectable trademark . . . ."  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d

2  1036, 1046 (9th Cir. 1999); *see also* 15 U.S.C. § 1114(1).   Ms. DeBruine brings several

3  arguments as to why the Court should dismiss these claims and enter summary judgment

4  in her favor.  She argues she may use the Trademark because Ms. Lightfoot has abandoned

5  the Trademark; Ms. DeBruine is expressly permitted to use the Trademark; and Ms.

6  Lightfoot's claim to the Trademark is void *ab initio* because Ms. Lightfoot misrepresented

7  portions of her Trademark registration.  For the following reasons, the Court rejects all of

8  Ms. DeBruine's arguments.

9         **ii.  Abandonment**

10        Ms. DeBruine first argues the Court should enter summary judgment in her favor

11  because Ms. Lightfoot abandoned the Trademark after the 2014 Agreement, which

12  prohibited her from using the Trademark in her solo performances.  (Doc. 70 at 6).[8]  Ms.

13  DeBruine supports this argument, in part, with quotes from a news article in which Ms.

14  Lightfoot says the Company "voted that I was the only sister that couldn't say I was 'of

15  Sister Sledge or 'from' Sister Sledge."  (Doc. 86 at 3).

16        Claims for trademark infringement and unfair competition fail if the party bringing

17  the claims has abandoned its trademark, which a defendant may show by demonstrating

18  "(1) discontinuance of trademark use and (2) intent not to resume such use . . . ."  *Electro*

19  *Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 935 (9th Cir. 2006) (citing

20  15 U.S.C. § 1127).  The "use" of a trademark means its "bona fide" use, such as "when it

21  is used or displayed in the sale or advertising of services . . . ."  15 U.S.C. § 1127.  "All

22  bona fide uses in the ordinary course of business must cease before a mark is deemed

23  abandoned."  *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1072 (9th

24  Cir. 2014), *as amended* (Mar. 11, 2014).

25        Ms. Lightfoot concedes she was not permitted to use the Trademark in her solo

26  performances, except for descriptive purposes.  (Doc. 80 at 4).  However, Ms. Lightfoot

27  argues that she did not abandon the Trademark because she still used the Trademark when

28  _____

[8] The Court notes that neither party produced a copy of the Agreement in their briefing.
Their representations of its provisions are based upon declarations and depositions.

1    she performed as a group with her sisters.  (*Id.*)  Ms. DeBruine does not dispute that Ms.

2    Lightfoot sometimes performed with her under the Trademark, even after the Agreement.

3    (Doc. 82 at 3, 8) ("[W]hen all the sisters performed under the name 'Sister Sledge," that

4    was a trademark use . . . .").  The question, then, is whether a performer abandons a

5    trademark if she promises to not use a trademark in solo performances but nonetheless

6    participates in group performances that do use the mark.

7          The Court finds that Ms. Lightfoot did not abandon the Trademark.  Trademarks are

8    used when they are used or displayed in the sale or advertising of services.

9    15 U.S.C. § 1127.  Because the Trademark was used in the advertising of Ms. Lightfoot's

10   services as a performer in the Sister Sledge group with Ms. DeBruine, Ms. Lightfoot used

11   the Trademark.  Ms. DeBruine argues that whether Ms. Lightfoot performed in Sister

12   Sledge as a group is immaterial because she waived her right to use the Trademark in her

13   solo performances.  (Doc. 82 at 3).  The Court rejects this argument.  Ms. Lightfoot agreed

14   not to use the Trademark in some, but not all, performances.  To show abandonment, "*[a]ll*

15   bona fide uses in the ordinary course of business must cease before a mark is deemed

16   abandoned."  *Wells Fargo*, 758 at 1072 (emphasis added).  Therefore, the evidence does

17   not show that Ms. Lightfoot abandoned the Trademark after the Agreement.

18                    **iii.    Permitted Use**

19         Next, Ms. DeBruine argues Plaintiffs' infringement claims fail because the

20   undisputed evidence shows she is permitted to use the Trademark.  (Doc. 70 at 11).  The

21   owner of a trademark may consent to someone else's use.  *See* 15 U.S.C. § 114(1) ("Any

22   person who shall, without the consent of the registrant" use a registered trademark is

23   subject to a civil action.).  Plaintiffs do not contest that Ms. DeBruine may, in some

24   circumstances, use the Trademark.  (Doc. 80 at 4).  However, Plaintiffs argue that Ms.

25   DeBruine is not authorized to use the Trademark in all circumstances, such as with Ms.

26   DeBruine's group Sledgendary.  (*Id.* at 5).

27         Ms. DeBruine argues that Ms. Lightfoot cannot cite "any agreements between the

28   sisters or resolutions by the [Company] predating May 6, 2019 because they were

superseded" by a resolution that the Company dissolved restrictions on any member's use of the Trademark. (Doc. 82). And yet in her Reply, Ms. DeBruine cites to the 2020 Trademark License Agreement between Ms. Lightfoot and the Company, which specifically states the Trademark may not be used by Ms. DeBruine in her individual capacity or by Sledge Entertainment. (Doc. 80-1 at 28–33).[9] This document entirely contradicts Ms. DeBruine's argument. It shows Ms. DeBruine and her company were not licensed users under an agreement signed by the Company after 2019. Therefore, the Court rejects Ms. DeBruine's claim that she is permitted to use the Trademark to the extent she argues she may use it to promote Sledgendary or Sledge Entertainment.

### iv. Fraudulent Trademark Registration

Ms. DeBruine next argues that even if Ms. Lightfoot had not consented to her use of the Trademark, any interest Ms. Lightfoot claimed in the Trademark was void *ab initio* because it was fraudulently obtained. (Doc. 70 at 11). "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120. Here, Ms. DeBruine claims that Ms. Lightfoot misrepresented two parts of her Trademark registration.

First, Ms. DeBruine argues Ms. Lightfoot stated the Trademark was first used in 1981, when it was actually first used in 1971. (Doc. 70 at 15–16). Ms. DeBruine's argument only cites to her own declaration for support, which the Court finds misrepresents Ms. Lightfoot's actual application. (Doc. 83-1 at 72). The application itself states that the Trademark was first used "at least as early" as 1975 and first used in commerce "at least as early" as 1981. (Doc. 70 at 93, 95). There is no misrepresentation here.

Second, Ms. DeBruine argues Ms. Lightfoot misrepresented the part of the application that affirmed that "no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce . . . ." (*Id.* at 96). Because the Company had

---

[9] The Court notes that, strangely, Plaintiffs do not cite to the 2020 Trademark License Agreement.

used the Trademark, Ms. DeBruine argues Ms. Lightfoot's affirmation is false. (Doc. 70 at 16). But this is not a false statement. By Ms. DeBruine's own admission, the Company's interest in the Trademark had lapsed in 2016. (*Id.* at 4). Ms. Lightfoot's subsequent application would then have been filed when both the Company and Ms. Lightfoot were concurrent Trademark users. Ms. DeBruine herself cites to Ms. Lightfoot's deposition where she states she considered Ms. DeBruine a concurrent user. (Doc. 79 at 11). Therefore, Ms. DeBruine has not cited to any evidence showing that Ms. Lightfoot misrepresented any part of her Trademark application.

### v.  Conclusion

The Court denies Ms. DeBruine's request for summary judgment in her favor for the federal trademark infringement claim, the unfair competition claims, and her fraudulent trademark registration counterclaim. Her arguments lack merit and have, in several instances, misrepresented the record before the Court.

The Court has its doubts that Ms. DeBruine has any remaining defenses to Plaintiffs' federal trademark infringement claims. However, Plaintiffs' failure to clearly seek summary judgment on these claims precludes the Court from fully assessing the merits of their claims.[10]

### b.  Arizona Unfair Competition

As with federal unfair competition claims, the question in an Arizona unfair competition claim "is whether or not, as a matter of fact, the name adopted by defendant has previously come to indicate plaintiff's business, and whether the public is likely to be deceived." *Boice v. Stevenson*, 187 P.2d 648, 651 (Ariz. 1947). Ms. DeBruine argues, as with the federal trademark claims, that she is entitled to summary judgment in her favor for this claim because Plaintiffs do not have a valid entitlement to the Trademark and because Ms. DeBruine was authorized to use it. (Doc. 70 at 12). As explained above, the

---

[10] For instance, the parties nowhere raise any argument related to priority of use. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."), *cert. denied*, 521 U.S. 1103 (1997).

1   Court rejects these arguments.  Therefore, the Court denies Ms. DeBruine's request to enter

2   summary judgment in her favor for this claim.

3          c.  **Unjust Enrichment**

4          Ms. DeBruine seeks summary judgment in its favor for Plaintiffs' unjust enrichment

5   claim as well as her own unjust enrichment counterclaim.  (Doc. 70 at 12–14).  An unjust

6   enrichment claim requires a showing of "(1) an enrichment, (2) an impoverishment, (3) a

7   connection between the enrichment and impoverishment, (4) the absence of justification

8   for the enrichment and impoverishment, and (5) the absence of a remedy at law."  *Span v.*

9   *Maricopa Cty. Treasurer*, 437 P.3d 881, 886 (Ariz. Ct. App. 2019).  If a legal remedy is

10  available, then the unjust enrichment claim fails.  *Loiselle v. Cosas Mgmt. Grp., LLC*, 228

11  P.3d 943, 947 (Ariz. Ct. App. 2010).

12         Plaintiffs' unjust enrichment claim is based upon Ms. DeBruine's misappropriation

13  of the Trademark.  (Doc. 13 at 8).  Ms. DeBruine argues she is permitted to use the

14  Trademark, and so there is a justification that warrants entry of judgment in her favor.

15  (Doc. 70 at 13–14).  But, again, Ms. DeBruine has not shown that she is entitled to use the

16  Trademark, and so the Court will deny her request to enter judgment in her favor for

17  Plaintiffs' unjust enrichment claim.

18         Ms. DeBruine's unjust enrichment counterclaim is brought on the Company's

19  behalf.  Ms. DeBruine argues that Ms. Lightfoot was unjustly enriched when she dissolved

20  the Agreement and when she obtained the trademark.  (Doc. 70 at 15).  This deprived the

21  Company, Ms. DeBruine argues, of its expected benefit under the Agreement and it

22  deprived the Company of its "major asset—the U.S. trademark."  (*Id.*)

23         The Court declines to grant summary judgment in Ms. DeBruine's favor for this

24  unjust enrichment counterclaim because she fails to cite to any evidence showing that the

25  Company suffered an impoverishment.  (*See id.*)  While it may be that the Company no

26  longer has the expected benefit of the Agreement, there is no showing that the Company

27  has been impoverished by the change in its contractual relationship with Ms. Lightfoot.  In

28  other words, the evidence Ms. DeBruine cites does not preclude the possibility that

1    dissolving the Agreement benefitted the Company.

2         In addition, Ms. DeBruine fails to show there is no dispute as to the absence of

3    justification.  It is undisputed that the Company itself allowed the Trademark to lapse.

4    (Docs. 70 at 3; 71 at 4).  It is misleading, then, to assert that Ms. Lightfoot "deprived" the

5    Company of the trademark after the Company let the Trademark go in the first place.

6    (*See* Doc. 70 at 15).  Ms. Lightfoot could justify her decision to obtain the Trademark by

7    simply arguing that the Company failed to safeguard it.  The Court, therefore, declines to

8    enter summary judgment in her favor.

9         **d.  Breach of Fiduciary Duty**

10        Ms. DeBruine seeks summary judgment on her breach of fiduciary duty

11   counterclaim, which she brings on the Company's behalf.  (Doc. 70 at 14).  To bring a

12   breach of fiduciary claim requires showing that a fiduciary duty was breached and that

13   damages resulted.  *See D'Amico v. Structural I Co.*, 2012 WL 1150795, at *3 (Ariz. Ct.

14   App. Apr. 3, 2012).  "To recover for a breach of fiduciary duty, a corporation must suffer

15   actual pecuniary damages."  *Id.* (citing *AMERCO v. Shoen*, 907 P.2d 536, 542 (Ariz. Ct.

16   App. 1995)).

17        As with her unjust enrichment argument, Ms. DeBruine's argues Ms. Lightfoot

18   breached a fiduciary duty to the Company by dissolving the Agreement and obtaining the

19   Trademark.  But Ms. DeBruine fails to provide any evidence that the Company suffered

20   any damage, let alone actual pecuniary damage.  *See id.*  Therefore, the Court denies Ms.

21   DeBruine's request for summary judgment on her breach of fiduciary duty counterclaim.

22        **e.  Declaratory Judgment**

23        Finally, Ms. DeBruine seeks a declaratory judgment from the Court.  (Doc. 70 at

24   15).  The Declaratory Judgment Act permits courts to "declare the rights and other legal

25   relations of any interested party seeking such declaration" when there is a case of "actual

26   controversy" before it.  28 U.S.C. § 2201.  Declaratory judgment is not a claim and

27   standing alone it does not grant a court subject matter jurisdiction. *Fid. & Cas. Co. v. Rsrv.*

28   *Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979).  Rather, it is a type of relief.  *Id.*  Because Ms.

1  DeBruine has not shown that she prevails on any of their underlying claims, the Court

2  denies her request for declaratory relief.

3  **V.    Temporary Restraining Order**

4          The Court now addresses Ms. DeBruine's Motion for Preliminary Injunction, which

5  was filed after her Motion for Summary Judgment.   To obtain a preliminary injunction, a

6  party must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable

7  harm if injunctive relief were denied, (3) that the equities weigh in the plaintiff's favor, and

8  (4) that the public interest favors injunctive relief.   *Winter v. Nat. Res. Def. Council, Inc.*,

9  555 U.S. 7, 20 (2008).

10         Ms. DeBruine has failed to cite any evidence showing that she has a likelihood of

11  success.   To the contrary, the evidence presented to the Court shows Ms. DeBruine will

12  likely fail for three reasons.   First, the evidence shows that Ms. DeBruine is using the

13  Trademark in violation of the 2020 Trademark License Agreement.   Second, the evidence

14  shows Ms. Lightfoot is the valid Trademark owner.   Third, no evidence shows the

15  Company suffered any damages to support the counterclaims of breach of fiduciary duty

16  or unjust enrichment.   Therefore, Ms. DeBruine's Motion for Preliminary Injunction is

17  denied.

18  **VI.   Conclusion**

19         Normally, at this stage in the proceedings, the Court would require the parties to file

20  a notice of readiness for trial.   But the Court will not do so here because it doubts any

21  genuine factual issues remain.   As presented to the Court, the record suggests that Plaintiffs

22  prevail on all of their claims and the counterclaims.

23         Despite the Court's impression of the record and pleadings, it declines to enter

24  summary judgement in Plaintiffs' favor yet.   The quality of Plaintiffs' briefing suggests

25  there are legal or factual issues of which the Court is unaware because they failed to address

26  them.   Therefore, the Court will set a status conference where the parties will discuss how

27  they wish to proceed.   Given the circumstances, it may be appropriate to allow each party

28

1   a chance to file another dispositive motion,[11] or the parties could jointly request a

2   settlement conference with a magistrate judge.  The parties may also wish to proceed with

3   trial.  But the Court notes that it would be a waste of the parties' time and judicial resources

4   to go to trial on the record that has so far been presented to the Court.

5         Accordingly,

6         **IT IS HEREBY ORDERED** that Defendant's Motion to Supplement Motion for

7   Summary Judgment (Doc. 86) is **granted**.

8         **IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment

9   (Doc. 70) is **denied**.

10        **IT IS FURTHER ORDERED** that Defendant's Motion for Preliminary Injunction

11  (Doc. 83) is **denied.**

12        **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment

13  (Doc. 72) is **denied**.

14        **IT IS FINALLY ORDERED** that the requirements set forth in Paragraph 11 of the

15  Rule 16 Scheduling Order (Doc. 50 at 7) regarding notice of readiness for pretrial

16  conference will be temporarily suspended.  Instead, the Court will hold a telephonic status

17  conference on March 28, 2022, at 11:00 AM in Courtroom 605, 401 West Washington

18  Street, Phoenix, AZ 85003.  The parties shall call five (5) minutes prior to the hearing start

19  time by dialing: 1-866-390-1828 and entering access code: 7618428 when prompted.

20        Dated this 8th day of March, 2022.

21

22

23

24                         Honorable Susan M. Brnovich
                        United States District Judge

25

26

27

28  [11] If the parties are given leave to file another motion for summary judgment, they shall
adhere to the Local Rules and prior Court Orders.  The Court will summarily strike any
filing that fails to do so.