**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathy Sledge Lightfoot, et al., | No. CV-20-00666-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Debra DeBruine, et al., | |
| Defendants. | |

      This case concerns an ongoing trademark dispute among sisters. Defendant/Counter Claimant Debra DeBruine ("Ms. DeBruine") has filed a renewed Motion for Summary Judgment (Doc. 93) ("Ms. DeBruine's Second Motion).[1]  Plaintiff/Counter Defendant Kathy Sledge Lightfoot ("Ms. Lightfoot") and Plaintiff Sister Sledge LLC ("the Company") (collectively "Plaintiffs") have filed a cross renewed Motion for Summary Judgment (Doc. 94) ("Plaintiffs' Second Motion").[2]  The Court must decide whether Plaintiffs are entitled to judgment on their trademark infringement and unfair competition claims as a matter of law under the Lanham Act (15 U.S.C. §§ 1051 *et seq.*).  For the following reasons, the Court grants Ms. DeBruine summary judgment and denies Plaintiffs summary judgment.

/ / /

---

[1] Ms. DeBruine's Second Motion is fully briefed.  Plaintiffs filed a Response (Doc. 100). Ms. DeBruine has not filed a reply and the time to do so has passed.  LRCiv. 7.4.

[2] Plaintiffs' Second Motion is fully briefed.  Ms. DeBruine filed a Response (Doc. 99). Plaintiffs have not filed a reply and the time to do so has passed.  *See* LRCiv 7.2(c).

## I.     Background[3]

Founding members—all family—of the popular music group known as "Sister Sledge" disagree on the ownership and use of the "Sister Sledge" Trademark (the "Trademark").  Ms. Lightfoot and the Company claim that Ms. DeBruine has infringed on their rights to the Trademark by using it to promote her other music group "Sister Sledge Sledgendary" on social media.  (Doc. 94 at 5, 13–16).  Ms. DeBruine counterclaims that Ms. Lightfoot is not the sole and exclusive owner of the Trademark and holds an invalid federal trademark registration.  (Doc. 93 at 5–10).  Below is an overview of the Sister Sledge music group; the music group's limited liability corporation; the history of the Trademark; and a summary of the Court's prior ruling on the parties' first motions for summary judgment.

### A.     The Sister Sledge Music Group

Ms. Lightfoot, Ms. DeBruine, Defendant/Counter Defendant Kim Allen Sledge ("Ms. Sledge"),[4] and nonparty Joan Sledge are all sisters.  (Docs. 11-1 at ¶ 3; 72-1 at ¶ 3).  In 1971, the four sisters formed the music group known as Sister Sledge (the "Group").  (Doc. 11-1 at ¶ 2).  The Group is known for their iconic hits such as "We Are Family," which was released in 1979.  (Doc. 72-1 at ¶ 3).  In 1989, Ms. Lightfoot pursued a solo career while continuing to perform with the Group.  (Doc. 11-1 at ¶ 4).

### B.     Sister Sledge LLC

In 2006, the Group and the sisters' mother formed Sister Sledge LLC.  (Doc. 72-2) (Articles of Organization of Sister Sledge LLC).  (*See* Docs. 72-1 at ¶¶ 4, 9; 11-1 at ¶ 5).  Each sister held a quarter interest in the Company as a member and manager.  (Doc. 91 at 2).  The Company was formed to manage the interests in the Trademark[5] as well as the Group's affairs.  (*Id.*)  In 2009, the Company obtained a federal registration for

---

[3] The Court will adopt portions of the Background Section from its prior Order.  (Doc. 91 at 2–5).

[4] On June 23, 2021, the Clerk of Court entered default against Ms. Sledge for failing to appear or otherwise respond to Ms. DeBruine's Amended Counterclaim (Doc. 26).  (Docs. 63; 64).

[5] The Company also owns the European Union Sister Sledge trademark.  (Doc. 11-1 ¶ 18).

the Sister Sledge Trademark (Doc. 72-6) (the "2009 Trademark Registration"). Sister Sledge, Registration No. 37,77,936; (*see* Doc. 91 at 2). There were various changes to the Company's Operating Agreement over the years. (Docs. 72-13 (the 2007 Operating Agreement); 72-3 (the 2008 Operating Agreement); 72-4 (the 2009 Operating Agreement)).

### C.    History of the "Sister Sledge" Trademark

In 1983, the Sister Sledge Trademark was first registered by Sledge Power Productions, Inc., the "predecessor" of Sister Sledge LLC. (Doc. 72-12) (the "1983 Trademark Registration); Sister Sledge, Registration No. 1,234,939; (*see* Doc. 72-1 at ¶ 9). This registration was inadvertently canceled due to inattention. (Docs. 72-1 at 4; 73 at 60).

In 1998, nonparty Joan Sledge applied for a federal registration in an attempt to renew the lapsed 1983 Trademark Registration. U.S. Trademark Application Serial No. 75/435,917 (filed Feb. 17, 1998); (*see* Doc. 73 at 61). However, Ms. Lightfoot, Ms. DeBruine, and Ms. Sledge opposed the application because it was filed in nonparty Joan Sledge's name only. (*Id.*)

In 2009, the Company obtained a registration for the Trademark. (Doc. 72-6); Sister Sledge, Registration No. 37,77,936.

In 2012, Ms. Sledge resigned as Company manager and the sisters voted to remove Ms. Lightfoot as Company manager. (Doc. 91 at 2). Ms. DeBruine and nonparty Joan Sledge remained the sole managers of the Company while all sisters continued to be members. (*Id.*)

In 2013, the Company sued Ms. Lightfoot for infringing on the Trademark because she used it to advertise her solo performances. (*Id.*) The Company and Ms. Lightfoot reached a "Settlement Agreement" where Ms. Lightfoot agreed not to use the Trademark except as a "factually descriptive term." (*Id.*) Thereafter, Ms. Lightfoot continued with her solo performances in compliance with the Settlement Agreement while also performing with the Group under the Trademark. (Docs. 80 at 4; 82 at 3, 8).

In 2016, the 2009 Trademark Registration lapsed. (Doc. 91 at 3). Nonparty Joan

Sledge, "whose health was failing," accidentally allowed it to expire.  (*Id.*) (citing Doc. 70 at 3).

In 2017, nonparty Joan Sledge's passing left Ms. DeBruine as the Company's sole manager.  (*Id.*)  Ms. DeBruine thus took over managing the Company's social media websites.  (Doc. 72-1 at ¶ 6; 73 at 73).  Thereafter, Ms. Lightfoot applied for and obtained a federal registration for the Trademark (Doc. 72-15) (the "2017 Trademark Registration"). Sister Sledge, Registration No. 5,373,639; (*see* Doc. 91 at 3); (*see also* Doc. 70 at 92–98) (Ms. Lightfoot's trademark application).

In 2018, Ms. Lightfoot performed shows in the United States under the Trademark, which Ms. DeBruine argues violated the prior Settlement Agreement.  (Doc. 91 at 3).

In 2019, Ms. Lightfoot and Ms. Sledge used their voting power as members to, among other things, remove Ms. DeBruine as manager of the Company and reinstate themselves as managers.[6]  (Docs. 70 at 5; 71 at 6).  The Company effectuated these changes through various resolutions.  (Docs. 72-8 (the April 2019 Resolution); 72-9 (the May 2019 Resolution); 72-10 (the October 2019 Resolution)).[7]

The May 2019 Resolution "withdrew the Company from claims that any Company member was violating the Trademark" and "dissolved the earlier [Settlement] Agreement, which had limited Ms. Lightfoot's use of the Trademark."  (Doc. 91 at 3) (citing Doc. 72-9 at 2).  To further resolve "concerns regarding the management of the Company, the Company Managers "(ii) approve[d] the advertisement of any performance by any individual [m]ember of the [C]ompany" and (iii) "dissolve[d] . . . any purported restrictions on any one [m]ember's use of the Sister Sledge brand or [T]rademark in any promotion or

---

[6] Ms. Lightfoot and Ms. Sledge's corporate changes were challenged in a 2019 lawsuit in Arizona Superior Court.  *See Sister Sledge LLC v. Kathy Lightfoot*, CV 2019-006743 (Ariz. Super. Ct. July 31, 2019) (the "2019 State Lawsuit).  There, "Judge Daniel G. Martin held that Ms. Sledge properly changed the Operating Agreement so that it could be amended by a "two thirds vote of the voting members," that Ms. Sledge and Ms. Lightfoot properly elected themselves as managers, and that Ms. DeBruine's attempts to exercise sole authority over the Company are 'null and void absent ratification by a two-thirds vote of the managers or voting members.'" (Doc. 91 at 3–4) (citing (Doc. 79 at 100) (containing the unpublished ruling)).

[7] Judge Martin authenticated the April and May 2019 Resolutions in the 2019 State Lawsuit.  (Doc. 72-1 at ¶ 15).

1   advertisement in connection with live performances in the U.S. and abroad."  (Doc. 72-9

2   at 2).

3        In 2020, Ms. Lightfoot purported to license the Trademark exclusively to the

4   Company and its managing members. (Doc. 72-11) (the "2020 License Agreement").

5   (Doc. 91 at 3; 72-1 at ¶ 11).  However, the Agreement clarified that "it does not apply to:

6   [Ms.] DeBruine as an individual, currently a member but not a managing member [the

7   Company.]"  (Doc. 72-11 at 2).

8         Since then, Plaintiffs claim Ms. DeBruine has continuously used the Trademark to

9   promote her performing group Sister Sledge Slegendary on the Company's social media

10  "without the approval of the [Company.]"  (Doc. 80-2 at ¶ 12).  Plaintiffs argue Sister

11  Sledge Slegendary falsely advertises itself as Sister Sledge because its members include

12  Ms. DeBruine, her children, and a male performer.  (Doc. 91 at 4).  They present

13  screenshots from the website <https://www.sistersledge.com> as proof of Ms. DeBruine's

14  unauthorized advertisements.  (Docs. 72-14 at 2; 72-19 at 2).

15       **D.     The Present Lawsuit**

16       The Company and Ms. Lightfoot filed suit against Ms. DeBruine for the following

17  claims: (1) federal trademark infringement under 15 U.S.C. § 1114; (2) federal unfair

18  competition under 15 U.S.C. § 1125(a); (3) Arizona state unfair competition; and (4)

19  Arizona state unjust enrichment.  (Doc. 13 at 5–9).  Plaintiffs also seek (5) a judgment

20  declaring that the Company is the rightful owner of Sister Sledge website and social media

21  accounts under 28 U.S.C. § 2201 and (6) injunctive relief against Ms. DeBruine under

22  15 U.S.C. § 1116.  (*Id*. at 9–10).

23       Ms. DeBruine does not contest her use of the Trademark, and instead argues she is

24  permitted to do so.   (Doc. 91 at 4).   Thus, Ms. DeBruine brought the following

25  counterclaims against Ms. Lightfoot: (1) breach of fiduciary duty to the Company; (2)

26  unjust enrichment; and (3) fraudulent trademark registration. (Doc. 26 at 17–19, 21–22).

27  Ms. DeBruine brought the first two claims as derivative claims on the Company's behalf.

28  (Doc. 26 at 118–19).  Ms. DeBruine also seeks (4) a judgment invalidating Ms. Lightfoot's

1  2017 Trademark Registration under 15 U.S.C § 1119.   (*Id.* at 20–21).

2  **E.      The Parties' First Cross Motions for Summary Judgment**

3       This is the parties' second time filing cross motions for summary judgment.  In the

4  first instance, the Court denied both parties' motions.  (*See generally* Doc. 91).  As to

5  Plaintiffs' first Motion for Summary Judgment (Doc. 72), Plaintiffs did not meet their

6  burden to sufficiently cite to the record and resolve any potential factual disputes.

7  (Doc. 91 at 6).

8       As to Ms. DeBruine's first Motion for Summary Judgment (Doc. 70), the Court

9  declined to enter judgment in Ms. DeBruine's favor and rejected the following legal

10 theories: (1) Ms. Lightfoot abandoned the trademark; (2) Ms. DeBruine is permitted to use

11 the trademark by Ms. Lightfoot's consent; and (3) Ms. Lightfoot's claim in the trademark

12 is void *ab initio* because it was fraudulently obtained.  (Doc. 91 at 6–10).  Accordingly, the

13 Court also rejected Ms. DeBruine's accompanying request for a preliminary injunction

14 (Doc. 83) because "Ms. DeBruine has failed to cite any evidence showing she has a

15 likelihood of success." (Doc. 91 at 13).   The Court now reviews the parties' renewed

16 motions for summary judgment.

17 **II.    Legal Standard for Summary Judgment**

18      A court will grant summary judgment if the movant shows there is no genuine

19 dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R.

20 Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A factual dispute is

21 genuine when a reasonable jury could return a verdict for the nonmoving party.  *Anderson*

22 *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court does not weigh evidence to

23 discern the truth of the matter; it only determines whether there is a genuine issue for trial.

24 *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).  A fact is

25 material when identified as such by substantive law.  *Anderson*, 477 U.S. at 248.  Only

26 facts that might affect the outcome of a suit under the governing law can preclude an entry

27 of summary judgment.  *Id.*

28      The moving party bears the initial burden of identifying portions of the record,

including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323.  Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Celotex Corp.*, 477 U.S. at 324, (holding the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial"). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

Additionally, "the moving party must offer evidence sufficient to support a finding upon every element of his claim for relief, except those elements admitted by his adversary in his pleadings, or by stipulation, or otherwise during the course of pretrial." *United States v. Dibble*, 429 F.2d 598 , 601 (9th Cir. 1970).  "[W]here [] the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).  The standard for granting summary judgment thus "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)[.]" *Celotex*, 477 U.S. at 323.

**III.  Discussion**

The Lanham Act ("Act") governs this matter, which provides a national system for trademark registration and protections.  The Act "forbids the unauthorized use of [a] registered mark in foreign and interstate commerce." *Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 323 (1938).  The Court must decide whether a genuine dispute of fact exists regarding ownership and use of the Sister Sledge Trademark.

1    In Plaintiffs' Second Motion, they request the Court to enter summary judgment on
2    their claims for federal trademark infringement, federal unfair competition, and Arizona
3    state unfair competition. (Doc. 94 at 5). They also seek an injunction (1) enjoining Ms.
4    DeBruine from using the Company's social media sites to promote her other music group
5    and (2) ordering her to relinquish control of the cites to the Company. (*Id*.) Last, Plaintiffs
6    seek an order dismissing all of Ms. DeBruine's counterclaims. (*Id*.)

7    In Ms. DeBruine's Second Motion, she requests the Court to enter summary
8    judgment in her favor on Plaintiffs' claim for trademark infringement. (Doc. 93 at 11–12).
9    She also seeks declaratory relief by way of a judgment that cancels Ms. Lightfoot's 2017
10   Trademark Registration. (Doc. 93 at 6–9). The Court will first consider Plaintiffs' claims
11   before turning to Ms. DeBruine's counter claims.

12   **A.    Sister Sledge LLC and Ms. Lightfoot's Claims**

13   Each party moves for summary judgment on Plaintiffs' claims for federal trademark
14   infringement, federal unfair competition, and Arizona state unfair competition. Plaintiffs
15   further argue they are entitled to injunctive relief because they prevail on these three
16   substantive claims. The Court will first consider Plaintiffs' substantive claims before
17   turning to their request for injunctive relief.

18   **1.    Trademark Infringement and Unfair Competition Claims Under
19          Federal and Arizona State Law**

20   The Lanham Act "creates a federal civil cause of action for unauthorized use of a
21   registered trademark." *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs.,*
22   *LLC*, 845 F.3d 1246, 1248 (9th Cir. 2017). The Act provides the following relief for
23   trademark infringement claims:

24       Any person who shall, without the consent of the registrant use in commerce
25       any reproduction, counterfeit, copy, or colorable imitation of a registered
         mark . . . which in connection with which such use is likely to cause
26       confusion, or to cause mistake, or to deceive . . . which shall be liable in a
27       civil action by the registrant for the remedies hereinafter provided.

28   15 U.S.C. § 1114(1)(a). The Act also provides the following relief for unfair competition

claims:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, . . . which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . which shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

*Id*. § 1125(a)(1).  The Arizona state law claims for trademark infringement under A.R.S. § 44-1451 "are essentially the same as the federal Lanham Act claims." *3 Ratones Ciegos v. Mucha Lucha Libre Taco Shop 1 LLC*, 2017 WL 4284570, at *2 (D. Ariz. 2017).

Noting these apparent similarities, the Ninth Circuit has explained that "federal and state laws regarding trademarks and related claims of unfair competition are substantially congruent." *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980); *see also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999).   The elements for a trademark infringement claim under the Act therefore serve as the basis for both federal and state unfair competition claims. *Int'l Order*, 633 F.2d at 916 (explaining "the choice of federal or state law frequently has no impact on the outcome, leading courts to avoid the issue").

Accordingly, the Court will examine Plaintiffs' trademark infringement and federal and state unfair competition claims together.  *See e.g*, *3 Ratones Ciegos*, 2017 WL 4284570, at *2 (citing *Brookfield*, 174 F.3d at 1046 n.8).  The Court will also treat Ms. DeBruine's request for summary judgment on Plaintiffs' trademark infringement claim to include judgment on Plaintiffs' federal and state unfair competition claims.

To support claims for trademark infringement and unfair competition under the Act, Plaintiffs must show: (1) ownership in a valid, protectable trademark; and (2) Ms. DeBruine's unauthorized use of the mark in commerce is likely to cause confusion. *See Brookfield*, 174 F.3d at 1046; *see also Microsoft Corp. v. Buy More, Inc.*, 703 F. App'x

476, 478–479 (9th Cir. 2017); *see also* 15 U.S.C. § 1114(1).  Here, Plaintiffs assert Ms. Lightfoot has a valid registration for the Trademark, which the Company manages. (Doc. 94 at 9).  Plaintiffs further argue Ms. DeBruine is creating confusion among the public by using the Trademark to promote her competing music group, Sister Sledge Sledgendary, on the Company's social media sites.  (*Id.*)  Ms. DeBruine does not contest her use of the Trademark in this manner; instead, she argues Plaintiffs' trademark infringement claim fails because she is protected as a prior and concurrent user. (Doc. 99 at 2).

When considering a motion for summary judgment in a trademark infringement case, all reasonable inferences are to be drawn in favor of the non-moving party.  *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159 (9th Cir. 2021) (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005).  Plaintiffs must meet both requisite elements of ownership and unauthorized use to prevail on their Second Motion. *Houghton*, 965 F.2d at 1536.  For Ms. DeBruine to prevail on her Second Motion, she "must demonstrate that, even [when] viewing the evidence in the light most favorable to [Plaintiffs], [Plaintiffs] cannot satisfy its burden to prove its claims."  *Ironhawk*, 2 F.4th at 1159 (citing *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016)).

### a.     Ownership

The first element of a trademark infringement claim requires Plaintiffs to show they own the Sister Sledge Trademark and that the mark is protectable.  It is undisputed and both parties agree that the Trademark is protectable.  At issue, however, is whether Ms. Lightfoot's 2017 Trademark Registration and subsequent 2020 License Agreement with the Company is sufficient to establish Plaintiffs' ownership over the Trademark.  The Registration identifies Ms. Lightfoot as the sole owner.  (Doc. 72-15 at 2).  Thus, Plaintiffs state that "[Ms.] Lightfoot is a necessary Plaintiff in this case" "as the title holder of the registration."  (Doc. 100 at 4).  Plaintiffs further clarify, however, that "it is the [Company] that is a Plaintiff in this case as owner of the trademark" and "it is the [Company] that

1   requests [Ms.] DeBruine cease her continued misuse of the [Trademark]." (*Id.*)  They
2   maintain that the Trademark is not owned by the Group.  (*Id.* at 5).

3       Ms. DeBruine contends that Ms. Lightfoot is not the sole and exclusive owner of
4   the Trademark because it collectively belongs to the Group and the Company.  (Docs. 93 at
5   9–10; 99 at 7–8).  She says that even if Ms. Lightfoot's Registration is valid, it cannot
6   "wipe out" each of the sisters' rights, including her right, to the Trademark as prior users.
7   (Docs. 93 at 11; 99 at 9).  As discussed below, the Court agrees that the Group and
8   Company hold joint ownership rights to the Trademark at common law notwithstanding
9   Ms. Lightfoot's Registration.

10                      **i.      Ownership by Registration**

11      "Registration of a mark is *prima facie* evidence of the validity of the mark, the
12   registrant's ownership of the mark, and the registrant's exclusive right to use the mark in
13   connection with the goods specified in the registration."  *Pom Wonderful LLC v. Hubbard*,
14   775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)).  This evidence creates a
15   "presumption of ownership, dating to the filing date of the application for federal
16   registration, and the challenger must overcome this presumption by a preponderance of the
17   evidence."  *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996)
18   (internal citations omitted).  Indeed, a trademark application and registration "constitute[s]
19   constructive use of the mark, conferring a right of priority, nationwide in effect . . . against
20   any other person except for a person whose mark has not been abandoned and who, prior
21   to such filing has used the mark[.]"  15 U.S.C. § 1057(c).

22      Therefore, Ms. Lightfoot's 2017 Trademark Registration serves as *prima facie*
23   evidence that she is the owner of the Trademark.  (Doc. 72-15).  The 2020 Trademark
24   License Agreement further shows the Company has rights to use the Trademark.
25   (Doc. 72 11).

26                      **ii.     Ownership by Prior Use**

27      Although Ms. Lightfoot's 2017 Trademark Registration creates a presumption of
28   the Plaintiffs' ownership, the Court must determine whether Ms. DeBruine overcomes this

presumption with her prior use defense.  *See* 15 U.S.C. § 1057(c).  Ms. DeBruine argues it is undisputed that she, the Group, and the Company all hold rights to the Trademark as prior users.  (Docs. 93 at 9–10; 99 at 7–9).

"[I]f the non-registrant can show that [s]he used the mark in commerce first, then the registration may be invalidated" at common law.  *Sengoku*, 96 F.3d at 1219.  "It is axiomatic in trademark law that the standard test of ownership is priority of use.  To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."  *Id*; *see also Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012).  "In deciding a question of first use, a court should examine the totality of the parties' activities."  *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151 (9th Cir. 2001) (citing *New West Corp. v. NYM Co. of Calif., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979)).  The totality of the circumstances test "must be employed to determine whether a service mark has been adequately used in commerce so as to gain the protection of the Lanham Act."  *Id*. at 1159.

The Court finds that the totality of the circumstances shows the Company and Group are prior users of the Trademark as a matter of law.  First, "trademark law permits a corporate entity to own the right to the name of a musical group[.]"  *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011) (citing *In re Polar Music Int'l AB*, 714 F.2d 1567, 1571 (Fed. Cir. 1983)).  Although the Company's Articles of Organization and Operating Agreements do not clearly state the Company's relation to the Trademark, the parties themselves agree the Company holds rights to the Trademark.

For example, Ms. DeBruine explains the Company was formed "to maintain the trademark 'Sister Sledge,' which has always been the Company's primary asset." (Doc. 11-1 at ¶ 5). Ms. Lightfoot further agrees the Company was formed "to manage the affairs of the Sister Sledge performing group"  (Doc. 72-1 at ¶ 4) and that "the Trademark Sister Sledge is and should be controlled" by the Company.  (Doc. 80-2 at ¶ 3).  Indeed, the Company has continued to support the Group's use of the Trademark in commerce

since 2006.  Thus, it is undisputed that the Company has used the Trademark before Ms. Lightfoot's 2017 Trademark Registration and therefore holds an ownership interest at common law.   Consequently, Ms. Lightfoot's attempt to "exclusively" license the Trademark to the Company and its managing members is void because the Company and already holds common law rights to the Trademark. (Docs. 72-11; 72-1 at ¶ 11).

Second, the record firmly establishes that the Group has used the Trademark since the 1970s. (Doc. 11-1 at ¶ 2).  The Trademark was placed into commerce by way of the Group's iconic hits such as "We Are Family," which was released in 1979.  (Doc. 72-1 at ¶ 3).  The Group's international success continued through the 1980s and the Group also released albums in 1998 and 2003.  (Doc. 93 at 3).  Indeed, the Group "has never stopped performing or commercially exploiting the Trademark since 1979." (*Id*. at 5).  The Court therefore rejects Plaintiffs' assertion that the Trademark is not owned by the Group.  (Doc. 100 at 5).  This case is not limited to the Company's interest in the Trademark because it is clear that the Group's use of the Trademark predates the formation of the Company. Therefore, the Company and the Group, comprised of the three surviving sisters, have used the Trademark before Ms. Lightfoot's 2017 Trademark Registration and hold ownership interests at common law.

In sum, Ms. DeBruine has met her burden to show by a preponderance of the evidence that the Group and Company, which necessarily include herself as a surviving sister and Company member, are prior users of the Trademark.  *Sengoku*, 96 F.3d at 1219. This effectively overcomes the presumption of sole ownership created by Ms. Lightfoot's 2017 Trademark Registration and renders such registration invalid.  *Id.*  No reasonable jury could find that Ms. Lightfoot is the sole and exclusive owner of the Trademark even though she possesses a federal registration.

### iii.     Ownership by Joint Users

The finding that Ms. DeBruine, the Group, and Company are prior users necessarily means Ms. Lightfoot is a prior user as well.  "When both parties are relying upon activities the two conducted in concert with one another, each in an attempt to establish prior rights

in a mark over the other, the dispute centers on ownership of the mark." *Wonderbread 5 v. Gilles*, 115 U.S.P.Q.2D (BNA) 1296, 1302 (Trademark Trial & App. Bd. June 30, 2015). It is settled that the Group, comprised of the surviving sisters, and the Company are joint owners of Trademark as prior users. "While joint ownership of trademarks is disfavored because it could lead to consumer confusion, it is not prohibited under federal trademark law." *E. W. Tea Co., Ltd. Liab. Co. v. Puri*, 2022 WL 900539, at *6 (D. Or. Mar. 28, 2022); *see* 2 J.T. McCarthy, McCarthy on Trademarks & Unfair Competition § 16:40 (5th ed.).

The cases that deal with trademark disputes among music group members explain that a finding of collective ownership among the music group necessarily includes its individual members. The Ninth Circuit has clarified that "a person who remains continuously involved with [a music] group and is in a position to control the quality of its services retains the right to use of the mark, *even when that person is a manager rather than a performer*." *Robi v. Reed*, 173 F.3d 736, 740 (9th Cir. 1999) (emphasis added) (citing *Rick v. Buchansky*, 609 F. Supp. 1522 (S.D.N.Y. 1985)) (holding a music group member does not retain any rights to the group's trademark when they depart from the group). Thus, members of a music group each hold joint rights to own and use the trademark so long as they are current members.

Here, Ms. DeBruine and Ms. Lightfoot are both current members of the Group and therefore hold joint ownership rights. The record undoubtedly shows that Ms. DeBruine and Ms. Lightfoot are two of the four founding sisters of the Group. It is also undisputed that the Company was created to manage the Group's affairs and Ms. Lightfoot and Ms. DeBruine have remained members of the Company since its formation in 2006. Thus, Ms. Lightfoot and Ms. DeBruine both "retain[] the right to use of the [Trade]mark" because both are "in a position to control the quality of [the Company's] services." *Id*. Even though Ms. DeBruine and Ms. Lightfoot may dispute the extent each of them served as performers, this dispute is immaterial and cannot diminish their equal rights to use of Trademark.[8] *Id*;

---

[8] Furthermore, this Court has already rejected Ms. DeBruine's argument that Ms. Lightfoot abandoned her use of the trademark. (Doc. 91 at 7–8).

1    *see also Anderson*, 477 U.S. at 248 (only facts that might affect the outcome of a suit under

2    the governing law can preclude an entry of summary judgment).

3         Furthermore, the totality of the circumstances shows the parties intended that all

4    sisters should hold ownership rights to the Trademark as joint users.  For example, Ms.

5    DeBruine testified in her deposition that the Company "was formed because we [(the

6    sisters)] wanted to be able to put . . . *our* trademark in a place where each of the family

7    members could have ownership of the trademark."  (Doc. 73 at 20) (emphasis added).  Ms.

8    DeBruine admits that "[Ms.] Kathy [Lightfoot] has a stake, an interest[,] in the Sister

9    Sledge [T]rademark as do all the members of the [Company]."  (Doc. 73 at 22).

10        Ms. Lightfoot stated similar intentions when filing for the 2017 Trademark

11   Registration:

12        I acknowledged in 2017, when I filed the trademark application, that my
13        sisters had the rights to the Sister Sledge trademark, and by such
         acknowledgment assuredly had no attention to deprive my sisters from use
14        of the trademark when I filed the trademark application.

15   (Doc. 80-2 at ¶ 19).  She further explained she filed for the registration "to protect *our*

16   Sister Sledge Trademark[.]"  (Doc. 72-1 at ¶ 10) (emphasis added).  Taken together, Ms.

17   DeBruine and Ms. Lightfoot's statements all convey the harmonized intent that all sisters

18   have rights to use the Trademark.

19        Last, this exact scenario occurred in 1998 when nonparty Joan Sledge applied for a

20   federal registration in an attempt to renew the lapsed 1983 Trademark Registration.  U.S.

21   Trademark Application Serial No. 75/435,917 (filed Feb. 17, 1998); (*see* Doc. 73 at 61).

22   There, the remaining three sisters opposed the application because it was in nonparty Joan

23   Sledge's name only, not the Group.  (Doc. 73 at 61).  This also demonstrates the parties

24   intended the Trademark to be owned as a collective group and not by an individual sister

25   alone.

26        The record and totality of the circumstances show that the Trademark has multiple

27   owners.  The Group, the Company, and the three surviving sisters each hold common law

28   rights to the Trademark as prior, joint users.  Relevant here, Ms. Lightfoot and Ms.

1   DeBruine are current members of the Group because they remain continuously involved
2   through varying capacities as performers, Company managers, Company members, or a
3   combination thereof.  Accordingly, Ms. Lightfoot and the Company have met their burden
4   as Plaintiffs in proving ownership to the Trademark despite the invalidity of Ms.
5   Lightfoot's 2017 Trademark Registration.  The Court thus proceeds to determine whether
6   Plaintiffs can show unauthorized use on behalf of Ms. DeBruine.

7                              **b.      Unauthorized Use**

8          The second element of a trademark infringement claim requires Plaintiffs to show
9   Ms. DeBruine engaged in unauthorized use of the Trademark that is likely to cause
10  confusion.  *Microsoft*, 703 F. App'x at 478–479.  Plaintiffs allege that Ms. DeBruine is
11  using the Trademark on social media to promote her other music group, Sister Sledge
12  Sledgendary, "without the approval of the [Company.]"  (Doc. 80-2 at ¶ 12; 94 at 9).  Ms.
13  DeBruine admits that she, her daughter, her adopted daughter, her son, and nonparty Joan
14  Sledge's son perform as Sister Sledge Sledgendary.  (Doc. 73 at 17).  She makes no attempt
15  to defend her use of the Trademark in this manner and instead argues she is authorized to
16  do so by virtue of her ownership rights at common law.  (Doc. 93 at 11).  Thus, the Court
17  will examine Ms. DeBruine's use of the Trademark in light of her rights to the Trademark
18  as a surviving sister of the Group and member of the Company.

19                      **i.      Infringement Claims Among Co-Owners**

20         As a current member of the Group, Ms. DeBruine "retains the right to use of the
21  [Trade]mark."  *Robi*, 173 F.3d at 740.  Co-owners of trademarks hold "equal and unfettered
22  rights of use."  *Piccari v. GTLO Prods., LLC*, 115 F. Supp. 3d 509, 516 (E.D. Pa. 2015).
23  The Supreme Court and Ninth Circuit have not yet considered when an owner of a
24  trademark brings a claim for infringement against another co-owner.  "But in the handful
25  of cases where trademark co-ownership is at issue, courts have held that federal claims for
26  dilution and infringement cannot be maintained against co-owners."  *E. W. Tea Co., LLC*
27  *v. Puri*, 2022 WL 900539, at *6 (D. Or. Mar. 28, 2022) (citing  *Piccari*, 115 F. Supp. 3d at
28  515; *Deriminer v. Kramer*, 406 F.Supp.2d 756, 759 (E.D. Mich. 2005) ("An owner does

1    not infringe upon his co-owner's rights in a trademark by exercising his own right of use.");

2    *see also Derminer v. Kramer*, 2005 WL 8154857, *7 (E.D. Mich. July 14, 2005) ("[W]here

3    a mark is held by multiple owners each owner would have an equal right to use the mark

4    such that a joint owner cannot be held as an infringer against any other joint owner.")

5    (internal citations omitted);  *see also Puri v. Yogi Bhajan Admin. Tr.*, 2015 WL 12684464,

6    at *11 (C.D. Cal. Oct. 30, 2015) ("A trademark co-owner does not infringe upon his co-

7    owners rights by exercising his own right of use.").  The Court turns to these persuasive

8    authorities for guidance.

9        In *Piccari v. GTLO Prods.*, a Pennsylvania district court turned to the statutory

10   construction of the Lanham Act to address the issue of infringement claims among joint

11   owners.  115 F. Supp. at 515.  The Court noted that "[t]he law of trademark protects

12   *trademark owners* in the exclusive use of their marks when use by another would be likely

13   to cause confusion."  *Id.*  (quoting *Interpace Corp. v. Lapp*, 721 F.2d 460, 462 (3d Cir.

14   1983)).  It further explained that "[b]ecause co-owners are naturally associated with the

15   same source, . . . use by a co-owner cannot create confusion as to the source among

16   consumers."  *Id.*  Accordingly, it concluded "[t]he purpose of the Lanham Act is not

17   furthered by permitting co-owners to lodge trademark infringement claims against one

18   another premised upon a co-owner's use of the mark."  *Id.*

19       Likewise, in *Derminer v. Kramer*, a Massachusetts district court turned to the

20   principles of copyright and patent law to explain the "traditional approach" is that a co-

21   owner cannot sue another co-owner for infringement.  2005 WL 8154857, at *7 (citing

22   *Steem-Electric Corp. v. Herzfeld-Phillipson Co.*, 118 F.2d 122, 128 (7th Cir. 1940)

23   (recognizing a joint inventor of patent cannot be held liable for unfair competition or

24   infringement by co-inventor); *Cortner v. Isreal*, 732 F.2d 267, 271 (2d Cir. 1984) (citing

25   *Richmond v. Weiner*, 353 F.2d 41, 46 (9th Cir. 1965)) ("[O]wner of a copyright is incapable

26   of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright

27   sue his co-owner for infringement.").  This proposition is also consistent with the leading

28   trademark treatise "McCarthy on Trademarks & Unfair Competition," which explains that

"[w]hen parties are co-owners of a mark, one party cannot sue the other for infringement. A co-owner cannot infringe the mark it owns."  2 J.T. McCarthy, McCarthy on Trademarks & Unfair Competition § 16:40 (5th ed.).

This Court follows the reasoning above from the Pennsylvania, Massachusetts, Oregon, California, Pennsylvania, Massachusetts, and Michigan district courts and finds that an owner of a trademark cannot maintain an action for infringement against a co-owner because they both enjoy equal rights of usage.  Therefore, Plaintiffs cannot sustain a trademark infringement or unfair competition claim against Ms. DeBruine on the basis of her use of the Trademark as a co-owner.  *See Supra* Section III.A(1).

### ii.    Scope of Authorized Use

The Court will nevertheless consider whether Ms. DeBruine's use of the Trademark is authorized as a member of the Company.  When a joint venture, such as the Company, holds a trademark, "[t]he joint venture has an indivisible interest in its trademarks and consumer good will."  *Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941, 943 (D. Colo. 1988).  The "[r]eciprocal duties of the joint venturers prevent one from taking unfair advantage of consumer good will to the detriment of the other."  *Id.*  Thus, members of a joint venture are entitled to use its trademark in accordance with the joint venture's relevant agreements.  *Piccari*, 115 F. Supp. 3d at 516 (citing *Durango*, 719 F. Supp. at 943).  A party infringes upon a joint venture's trademark when it uses the trademark in a manner that exceeds the scope of use authorized by the joint venture.  *Id.*; *see Durango*, 719 F. Supp. at 944, 953 (finding the defendant's use of the joint venture's trademark constituted infringement because the parties' publication agreement included "a provision which prevents either party from competing with the joint venture in its service area").  In this way, a joint venturer's right to use the joint venture's trademark is more limited than a co-owner's "unfettered rights of use." *Piccari*, 115 F. Supp. 3d at 516.

Here, Plaintiffs argue the Company does not authorize Ms. DeBruine to use the Trademark "for a performing group that does not include either of the other surviving sisters of the Sister Sledge group" or "appearances that do not charge admission for the

1   performances." (Doc. 94 at 13–14) (citing Doc. 72-1 at ¶ 17).  Thus, they reason that Ms.

2   DeBruine is not authorized to use the Trademark to promote Sister Sledge Sledgendary on

3   social media.  (Doc. 72-1 at ¶ 15).  They say "[s]uch activities are harmful to the Sister

4   Sledge brand." (Doc. 80 2 at ¶ 12).

5        As mentioned, the Company's Articles of Organization and Operating Agreements

6   do not clearly define the Company's relationship with the Trademark.  Thus, the Court

7   looks to the record for other relevant agreements executed by the Company to determine

8   the scope in which the Trademark may be used.  Prior to 2019, the parties state there was

9   an agreement that "all [sisters] were free to perform as Sister Sledge, preferably together"

10  and "if two sisters or more were present [they] could call it Sister Sledge." (Docs. 73 at 38;

11  94 at 15; 100 at 5).  However, "if there was only one sister at that time, then that sister

12  would not call it Sister Sledge" unless she obtained permission from the other sisters.  (Doc.

13  73 at 38–39; 94 at 15; 100 at 5).  Plaintiffs rely on this oral agreement to argue Ms.

14  DeBruine's use of the Trademark is unauthorized.  (Doc. 94 at 15–16).

15       However, this oral agreement was dissolved when the Company passed a May 2019

16  Resolution. (Doc. 91 at 3) (citing Doc. 72-9 at 2).  The resolution explicitly "(ii) approve[d]

17  the advertisement of any performance by any individual [m]ember of the [C]ompany" and

18  (iii) "dissolve[d] . . . any purported restrictions on any one [m]ember's use of the Sister

19  Sledge brand or [T]rademark in any promotion or advertisement in connection with live

20  performances in the U.S. and abroad." (Doc. 72-9 at 2).  Such resolution was executed by

21  Ms. Lightfoot and Ms. Sledge on the Company's behalf.  (*Id*. at 3).

22       The May 2019 Resolution's unambiguous text authorizes each of the Company

23  members to use the Trademark free from any restrictions.  Relevant here, the Resolution

24  dissolved "any purported restrictions" on Ms. DeBruine's use of the Sister Sledge brand or

25  Trademark "in *any* promotion or advertisement in connection with live

26  performances[.]" (*Id*. at 2) (emphasis added).  The general use of the term "any" includes

27  the promotion of Ms. DeBruine's live performances with Sister Sledge

28  Sledgendary.  Plaintiffs cannot construe this language to argue Ms. DeBruine is

- 19 -

unauthorized to use the Trademark "for a performing group that does not include either of the other surviving sisters of the Sister Sledge group" or "appearances that do not charge admission for the performances." (Doc. 94 at 13–14) (citing Doc. 72-1 at ¶ 17). The Resolution contemplates no such scenario, and it certainly does not impose any prohibitions against use of the Trademark in this way. Given the broad and explicit language of the Resolution, no reasonable juror would find that Ms. DeBruine's use of the Trademark was unauthorized or otherwise restricted.

Plaintiffs also attempt to rely on the 2020 License Agreement to characterize Ms. DeBruine's use of the Trademark as unauthorized. (Doc. 94 at 6) (citing Doc. 72-11). The Agreement purports to convey an "exclusive" license to the Company to use the trademark, and "does not apply to [Ms.] DeBruine" by its express terms. (Doc. 72-11 at 2). However, this Agreement was premised on the incorrect fact that Ms. Lightfoot, as a licensor, "is the sole and exclusive owner of US Trademark Registration No. 5,373,639 for the mark Sister Sledge." (*Id.*) As explained, the 2017 Trademark Registration is null and void because the Group and the Company are prior users. *See supra* section III.A(1)(a). Plaintiffs therefore cannot rely on the 2020 Trademark License to limit Ms. DeBruine's use of the Trademark or argue her current use of the Trademark is unauthorized.[9]

Although Plaintiffs have met their burden in showing they hold ownership rights in the Trademark, Plaintiffs cannot show unauthorized use because the Trademark is jointly owned. The record makes clear that Plaintiffs and Ms. DeBruine are prior users of the Trademark at common law. Thus, the parties enjoy equal rights to use the Trademark as co-owners. Moreover, Ms. DeBruine's use of the Trademark to promote her performances with Sister Sledge Slegendary clearly operates within the scope authorized by the May 2019 Resolution. Indeed, the resolution allows "any individual [m]ember of the [C]ompany" to use the Trademark "in any promotion or advertisement in connection with

---

[9] Although the Court previously interpreted the 2020 Trademark License to show that "Ms. DeBruine and her company were not licensed users under an agreement signed by the Company" (Doc. 19 at 9), this interpretation was made before Ms. DeBruine raised her prior use defense (*see* Doc. 19 at 10 n.10) and before the Court's finding that Ms. DeBruine holds ownership rights in the Trademark at common law. *See supra* Section III.A(1)(a).

live performances" free from "any purported restrictions." (Doc. 72-9 at 2). Ms. DeBruine has therefore demonstrated that, "even [when] viewing the evidence in the light most favorable to [Plaintiffs], [Plaintiffs] cannot satisfy its burden to prove its claims." *Ironhawk*, 2 F.4th at 1159. The Court will accordingly grant Ms. DeBruine summary judgment on Plaintiffs' claims for trademark infringement and unfair competition.

### 2.    Plaintiffs' Request for Injunctive Relief

The Court now turns to Plaintiff's request for an injunction under 15 U.S.C. § 1116. (Doc. 13 at 10). The Lanham Act allows a court to grant an injunction to "prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116. Plaintiffs seek to enjoin Ms. DeBruine from using the Sister Sledge social media sites to promote her other music group and ordering her to relinquish control of the cites to the Company. (Doc. 94 at 5).

"A plaintiff is entitled to a preliminary injunction in a trademark case when he demonstrates either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." *Brookfield*, 174 F.3d at 1046 (citing *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir. 1985)).

The Court has found that Ms. DeBruine is authorized to use the Trademark because she is a co-owner. *See supra* III.A(1). And, as discussed, the Court will grant Ms. DeBruine summary judgment on Plaintiffs' trademark infringement and unfair competition claims. (*Id*). This prohibits any finding of success on the merits of Plaintiffs' trademark infringement claim or the possibility of irreparable injury. *Brookfield*, 174 F.3d at 1046. The Court will therefore deny Plaintiffs summary judgment on their request for injunctive relief under 15 U.S.C. § 1116. To the extent Plaintiffs' request for injunction is based on their meritless trademark infringement and unfair competition claims, the request will be denied as moot.

### B.    Ms. DeBruine's Counter Claims

As to Ms. DeBruine's counterclaims, Ms. DeBruine's Second Motion for Summary

1    Judgment is limited to her request for declaratory judgment cancelling Ms. Lightfoot's

2    2017 Trademark Registration.   Plaintiffs' request the Court dismiss all four of Ms.

3    DeBruine's counterclaims.   The Court will first examine Ms. DeBruine's request for

4    declaratory relief.  The Court will then consider Ms. DeBruine's remaining counterclaims

5    against Ms. Lightfoot for breach of fiduciary duty to the Company, unjust enrichment, and

6    fraudulent trademark registration. (Doc. 26 at 17–19, 21–22).

### 1.    Ms. DeBruine's Request for Declaratory Judgment

8         First, Ms. DeBruine argues she is entitled to declaratory judgment cancelling Ms.

9    Lightfoot's 2017 Trademark Registration.  (Doc. 93 at 6–10).  "It is within the Court's

10   discretion whether to hear a counterclaim for declaratory judgment." *Davis v. Hollywood

11   & Ivar*, 2021 WL 4816822 (C.D. Cal. July 30, 2021).  "The Declaratory Judgment Act

12   gives the Court the *authority* to declare the rights and legal relations of interested parties,

13   but not a *duty* to do so."  *Stickrath v. Globalstar*, Inc., 2008 WL 2050990 (N.D. Cal. May

14   13, 2008) (citing *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008)).

15   Because the Court has established that Ms. Lightfoot is not the exclusive owner of the

16   Trademark, *see supra* Section III.A(1)(a), the Court will grant Ms. DeBruine's request for

17   declaratory relief under 15 U.S.C. § 1119.

18        "[W]here, as here, an action brought in federal court involves a registered mark, the

19   district court may order cancellation of the registration" *Pinkette Clothing, Inc. v. Cosmetic

20   Warriors, Ltd.*, 894 F.3d 1015, 1021 n.1 (9th Cir. 2018) (citing  15 U.S.C. § 1119).  The

21   Lanham Act provides the following procedure to obtain a trademark registration:

> The *owner* of a trademark used in commerce may request registration of its
> trademark on the principal register by paying the prescribed fee and filing in the
> Patent and Trademark Office an application and a verified statement[.]

25   15 U.S.C. § 1051(a)(1) (emphasis added).  "Accordingly, an application is *void ab initio* if

26   the person or entity filing the application was not the owner of the mark." *Davis*, 2021 WL

27   4816822, *4 (citing *Chien Ming Huang v. Tzu Wei Chen Food Co. Ltd.*, 849 F.2d 1458,

28   1460 (Fed. Cir. 1988)); *see Wonderbread*, 115 U.S.P.Q.2d 1296, at *14 (a trademark

1  registration was *void ab initio* where a partnership and not the individual music group

2  member applicant owned the mark); *see also* See *Conolty v. Conolty O'Connor NYC LLC*,

3  111 USPQ2d 1302, 1309 (TTAB 2014) (finding that because applicant and opposer are

4  "partners," applicant is not the sole owner of the mark and therefore the application is void).

5  "[I]f the non-registrant can show that [s]he used the mark in commerce first, then the

6  registration may be invalidated." *Sengoku*, 96 F.3d at 1219.

7  Although Ms. Lightfoot holds common law ownership rights to the Trademark as a

8  surviving sister of the Group and current managing member of the Company, it is well

9  settled that she is not the *sole and exclusive* owner of the Trademark as an individual. *See*

10  *supra* III.A(1)(a). The record establishes that the Group and the Company's prior use of

11  the Trademark predates Ms. Lightfoot's 2017 Trademark Registration by multiple decades.

12  (*Id.*) Therefore, Ms. Lightfoot's 2017 Trademark Registration is *void ab initio*. The Court

13  will accordingly grant Ms. DeBruine a judgment cancelling Ms. Lightfoot's 2017

14  Trademark Registration.

15  ### 2.    Ms. DeBruine's Substantive Counterclaims

16  Last, Plaintiffs seek summary judgment on Ms. DeBruine's remaining

17  counterclaims for breach of fiduciary duty to the Company, unjust enrichment, and

18  fraudulent trademark registration. They do so in a single sentence: "And for the reasons

19  noted in the [sic] by the Court in the Amended Order of March 3, 2022 (Doc. 91) it is

20  requested the counterclaims of [Ms.] DeBruine be dismissed." (Doc. 94 at 16).

21  The Court rejects this idle argument for summary judgment as wholly deficient.

22  Plaintiffs cannot summarily rely on the Court's prior findings that Ms. DeBruine is not

23  entitled to summary judgment to imply that they are entitled to judgment on the same

24  grounds. Plaintiffs do not cite to the record to show there is no dispute of material fact as

25  to the remainder of Ms. DeBruine's substantive claims. *See* Fed. R. Civ. P. 56(a); *see also*

26  *Celotex*, 477 U.S. at 323. Nor do they state the elements for any of Ms. DeBruine's

27  counterclaims for breach of fiduciary duty, unjust enrichment, or fraudulent trademark

28  registration claims or cite a single source of legal support as to why they are entitled to

judgment on these claims as a matter of law.  *See Dibble*, 429 F.2d at 601; *see also Houghton*, 965 F.2d at 1536.  Therefore, the Court will deny Plaintiffs' request for summary judgment on Ms. DeBruine's counterclaims.

**IV.    Conclusion**

In issuing its Order, the Court joins the scarce case law on joint ownership of trademarks.  First, the Court grants Ms. DeBruine summary judgment on Plaintiffs' claims for federal trademark infringement, federal unfair competition, and Arizona state unfair competition.  Plaintiffs' cannot proceed on these theories when Ms. DeBruine is a joint owner of the Trademark.  Second, the Court denies Plaintiffs' request for injunctive relief under 15 U.S.C. § 1116 as moot.  Plaintiffs cannot sustain a request for an injunction based on the allegations of meritless trademark infringement and unfair competition claims.  Third, the Court grants Ms. DeBruine summary judgment on her request for declaratory relief under 15 U.S.C. § 1119.  Ms. DeBruine is entitled to an order cancelling Ms. Lightfoot's 2017 Trademark Registration because it is *void ab initio*.  Last, the Court denies Plaintiffs summary judgment on DeBruine's counterclaims for breach of fiduciary duty, unjust enrichment, and fraudulent trademark registration.  Plaintiffs have not met their burden to show they are entitled to judgment on these counterclaims as a matter of law.

This leaves (1) Plaintiffs' claims for unjust enrichment and declaratory judgment (Doc. 13 at 8–10); and (2) and Ms. DeBruine's counterclaims for breach of fiduciary duty, unjust enrichment, and fraudulent trademark registration (Doc. 26 at 17–19, 21–22) to be resolved at trial.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant/Counter Claimant Debra DeBruine's Motion for Summary Judgment (Doc. 93) is **GRANTED** as to Plaintiffs' trademark infringement, federal unfair competition, and state unfair competition claims.  Plaintiffs' request for injunctive relief is therefore **DENIED** as moot.

**IT IS FURTHER ORDERED** that Plaintiff/Counter Defendant Kathy Sledge Lightfoot and Plaintiff Sister Sledge LLC's Motion for Summary Judgment (Doc. 94) is

**DENIED**.

   **IT IS FINALLY ORDERED** that in light of (a) the denial of summary judgment on Defendant/Counter Debra DeBruine's Claimant counterclaims for breach of fiduciary duty, unjust enrichment, and fraudulent trademark registration; and (b) Plaintiffs' remaining claims for unjust enrichment and declaratory judgment, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 50 at 7) regarding notice of readiness for pretrial conference.  Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

   Dated this 27th day of March, 2023.

Honorable Diane J. Humetewa
United States District Judge